UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW POWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>M. BARRON, et al.,<br><br>    Defendants. | Case No.: 1:15-cv-00089-SAB (PC)<br><br>ORDER DIRECTING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT OR NOTIFY THE COURT OF INTENT TO PROCEED ON CLAIMS FOUND TO BE COGNIZABLE<br><br>[ECF No. 23] |

Plaintiff Matthew Powell is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Now pending before the Court is Plaintiff's first amended complaint, filed on September 24, 2015.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff names M. Barron, R. Goings, I. Rivera, R. Hubach, K. Daveiga, J. Jones, J. Buckley, Maurice Junious, Derral G. Adams, Jack Batchelor, and N. Grannis, as Defendants.

Correctional officers threatened to pepper spray Plaintiff and handcuffed Plaintiff and forcibly dragged him up the stairs while in handcuffs. Officers then retaliated against Plaintiff by searching his cell, seizing and destroying personal property, and issuing a rules violation report. The seizing and destruction of Plaintiff's legal files led to Plaintiff's federal habeas corpus petition being dismissed as untimely.

During the month of January 2007, Plaintiff's cell had been searched approximately three to four times and items were removed from his cell without correctional officers leaving a cell search receipt.

On January 30, 2007, at approximately 7:30 p.m., correctional officers M. Barron and R. Goings were searching cells within the facility. After each cell was searched, Barron and Goings would push and drag all of the items previously taken from the cells that were searched and put it in front of the next cell.

At approximately 8:15 p.m., Barron and Goings proceeded to search Plaintiff's cell. Plaintiff stepped out of his cell and went downstairs while Barron and Goings conducted a search of Plaintiff's cell. When Plaintiff returned and entered his cell, he noticed it had been ransacked and was in disarray. Plaintiff then requested a cell search receipt which is to be provided anytime a correctional officer searches a cell. Officer Goings denied the request and told Plaintiff to "lock it up." Plaintiff refused "to lock it up without a cell search receipt." Officer Barron then pulled out his pepper spray can and started to shake it and told Plaintiff to "lock it up nigger before I spray you!" Officer Goings then took out his can of pepper spray and proceeded to shake it just as officer Baron.

Plaintiff "backed up quickly and made it downstairs with both c/o M. Barron and c/o R. Goings close behind with their pepper spray out. Plaintiff voluntarily got on his knees with his hands up to show he wasn't being hostile and to avoid being sprayed. Plaintiff assumed he would still be sprayed so he proned out on the ground." Officer Barron holstered his pepper spray and proceeded to handcuff Plaintiff while officer Goings watched with his pepper spray in hand. Once Plaintiff was handcuffed, officers Barron and Goings proceeded to forcibly drag Plaintiff back to his cell up the stairs. Plaintiff yelled out in pain because both officers were dragging him by the arms bending them all the way forward. Barron and Goings subsequently threw Plaintiff back to the ground and the buildings alarm was activated.

When an alarm is activated responding correctional officers, the sergeant on watch, the lieutenant on watch, and medical personnel are supposed to report to the alarm. Plaintiff believes the lieutenant on duty was R. Hubach, and Hubach purposely failed to respond to the alarm to avoid witnessing his subordinates commit malicious acts. Hubach made it his policy to not respond to any alarms. Hubach's subordinates know this and fear no repercussions for any negligent actions.

Sergeant I. Rivera responded to the alarm, along with other officers, and Plaintiff was escorted outside the building for approximately twenty minutes. When Plaintiff was returned to the building,

1  Plaintiff noticed that Sergeant Rivera was standing in front of his cell doorway and told the officers to
2  wait a minute to un-handcuff Plaintiff.  At that time, officer's Barron and Goings exited Plaintiff's cell
3  tossing and kicking out trash.  The trash was taken to the "hot trash" room, and once Plaintiff was un-
4  handcuffed and Plaintiff was in his cell, Sergeant Rivera proceeded to harass Plaintiff about
5  disobeying his officers.  When Plaintiff asked for a cell search receipt, officer Barron replied (in front
6  of officer Goings and Sergeant Rivera) "your cell search receipt will be a 115 … for making me look
7  bad in front of my comrades."
8         During this time, Plaintiff's cellmate Huggins was in the shower, and Plaintiff subsequently
9  realized that his Super III radio was missing along with all of his legal files which contained trial
10 transcripts, case law, briefs, notes, and forms.  Inmate Huggins went to inform control tower officer
11 Aquirre that Plaintiff was missing his property and legal files, and Aquirre informed officer's Barron
12 and Goings of the missing items.  Goings indicated he went to look for the items but did not find
13 anything.
14        Upon information and belief, officer Barron has prior behavior of searching inmate cells and
15 taking and destroying personal property without cause and without issuance of cell search receipt.
16 Warden, Derral G. Adams, was responsible for supervising, disciplining, and providing necessary
17 training for all correctional officers and staff employed at Corcoran State Prison.  Warden Adams
18 allowed officer Barron to be posted in a position where he could continue to deprive inmates of their
19 personal property and disregard the rules and policies of the institution.
20        Receiving and release officers informed Plaintiff that he had too much property (over the six
21 cubic feet limit) but failed to enforce its own policy pursuant to California Code of Regulation 3161
22 which states: "Inmates may request the institution/facility to store excess legal material/documents
23 related to their active case(s) when such materials/documents exceed this one cubic foot additional
24 allowance."
25        Warden Adams fails to make sure that the rules, regulations and policies are enforced and his
26 personal involvement of failing to supervise led to Plaintiff's legal files being confiscated while
27 Plaintiff was still navigating his direct appeal.
28

4

1  When Plaintiff's legal files were returned by way of his family sending him the files, Plaintiff
2  filed his federal habeas corpus petition.  The State filed a motion to dismiss the petition, and the
3  petition was ultimately dismissed as untimely.  The Defendants destruction of Plaintiff's personal
4  property and legal files led to the dismissal of Plaintiff's petition challenging his criminal conviction
5  as untimely.
6  While processing Plaintiff's inmate appeals, prison officials failed to act to remedy a wrong.
7  On each level of Plaintiff's appeal prison officials failed to remedy or correct the wrong by purposely
8  issuing a decision that is contrary to a regulation.
9  On May 21, 2007, Plaintiff's inmate appeal was screened out by correctional counselor J.
10 Buckley.  Buckley unattached supporting documents from Plaintiff's appeal then issued a screen out in
11 an effort to obstruct Plaintiff's grievance process.  Plaintiff received the screened out appeal on May
12 22, 2007, and that same day he received his supporting documents unattached from his grievance with
13 writing stating "rec'd w/no appeal attached 5/21/07."  When Plaintiff mailed his grievance on May 9,
14 2007, it was stapled and in an envelope.
15 On June 6, 2007, Plaintiff responded to the screen-out and sent the grievance directly to
16 Warden Adams along with a separate letter detailing the situation.  Warden Adams then had first-
17 hand knowledge of the incident.  Plaintiff also forwarded a duplicate copy of the letter to Chief Deputy
18 Warden, Maurice Junious and counselor Buckley.
19 On July 19, 2007, Plaintiff's appeal was "partially granted" and then "denied."  Jones
20 originally did the right thing in her original interview decision by "partially granting" at the second
21 level of review and then negligently produced another decision to deny the grievance at the order of
22 Junious.

### III.
### DISCUSSION

**A.  Due Process-Cell Search**

Under the Fourth Amendment, a seizure of property "occurs when there is some meaningful interference with an individual's possessory interest in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984).  The United States Supreme Court has held that "the Fourth Amendment has no

applicability to a prison cell." Hudson v. Palmer, 468 U.S. 517, 536 (1984). Further, the Court noted, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." Id. at 528 n. 8.

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

Plaintiff's allegations indicate that Defendants Barron and Goings wrongfully and arbitrarily confiscated and destroyed his personal property and legal files. The unauthorized deprivation of property, be it negligent or intentional, does not give rise to a claim for relief under the Due Process Clause. Hudson, 468 U.S. at 533.

Title 15 of the California Code of Regulations, section 3287, pertains to "Cell, Property, and Body Inspection." This section provides that "[t]he purpose of such inspections is to fix responsibility or the absence of responsibility for security and safety hazards and serious contraband found in the cell, room or dormitory area. Id. Under section 3287(a)(1), a correctional officer charged with conducting the inspection is authorized to search "occupied cells, rooms and dormitory areas, including fixtures and lockers, and any personal and state-issued property of the occupant … on an infrequent and unscheduled basis." Cal. Code Regs. tit. 15, § 3287(a)(1). The regulations further provide that:

> The inmate will be given a written notice of any item(s) of personal and authorized state-issued property removed from his or her quarters during an inspection and the disposition made of such property. The notice will also list any contraband picked up or any breach of security noted during the inspection, and the follow-up action intended by the inspecting officer.

Id. at § 3287(a)(4).

Plaintiff contends that his due process rights were violated because he was not provided a property receipt relating to the seized property.  However, as discussed above, the Due Process Clause guarantees only those protections outlined in Wolff; it does not mandate that prisons comply with their own more generous rules.  See Walker, 14 F.3d at 1419-1420; accord Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989) (prison's failure to meet its own guideline requiring hearing to be held in eight days of charge would not alone constitute denial of due process).  Thus, the mere fact that Defendant Barron may not have complied with his duty to issue a property receipt (as outlined by § 3287) does not establish that Plaintiff was denied due process of law.

It is apparent from Plaintiff's complaint that after the search of his cell, officers informed Plaintiff contraband in the form of fruit, syrup and inmate manufactured alcohol was confiscated. Obviously no cell receipt is necessary for unauthorized property, i.e. alcohol.  See Cal. Code Regs., tit. 15, 3190 & 3191, unauthorized or unregistered property in an inmate's cell is subject to confiscation.

However, Plaintiff also contends that personal property and legal files were confiscated in contravention of prison regulations and in violation of his constitutional rights.  Allegations of essentially random and unauthorized deprivations of personal property, do not allege a violation of a federal constitutional right.  Although such unauthorized deprivations of personal property may amount to state law violations, they do not constitute federal due process violations.  Consequently, Plaintiff's allegations regarding the confiscation of his personal property and legal files fails to give rise to a due process violation under § 1983.

To the extent Plaintiff seeks to state a due process claim based solely on the allegedly "false" allegations Defendant Barron wrote in the rules violation, Plaintiff fails to state a cognizable claim under 42 U.S.C. § 1983.  A prisoner does not have a constitutional right to be free from falsified disciplinary reports.  See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (claims based on the falsity of charges, standing alone, do not state constitutional claims); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("[A] prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Hanrahan v. Lane, 747 F.2d 1137, 1140-1141 (7th Cir. 1984) (allegations of a false or

7

fabricated disciplinary charge against an inmate fail to state a claim under § 1983); see also <u>Buckley v. Gomez</u>, 36 F.Supp.2d 1216, 1222 (S.D. Cal. 1997) (citing <u>Freeman</u> and noting that "courts have held that a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports."). Thus, to the extent Plaintiff seeks to assert a claim against Defendant Barron based on "false" allegations resulting in a rules violation for which he was found guilty, such claim is not sufficient to state a due process violation.

### B. Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (per curiam) (citing <u>Hudson</u>, 503 U.S. at 7) (internal quotation marks omitted); <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, <u>Hudson</u>, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, <u>Wilkins</u>, 559 U.S. at 37-8 (citing <u>Hudson</u>, 503 U.S. at 9-10) (quotation marks omitted); <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002).

Although Plaintiff admits that he did not initially comply with the officers' orders to "lock up," he contends that he subsequently surrendered and was in full compliance with their orders but was forcibly dragged up the stairs with his arms bend "all the way forward" and subsequently thrown on the floor. Assuming the truth of Plaintiff's allegations, as this Court must at the pleading stage, Plaintiff states a cognizable claim for excessive force against Defendants Barron and Goings.

### C. Inmate Grievance Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005). Plaintiff does not a

8

have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Plaintiff cannot base an independent constitutional claim on the handling or outcome of an inmate appeal. Thus, prisons officials are not liable for a due process violation for simply failing to process an appeal property, denying an inmate or granting an inmate appeal. See, e.g., Wright v. Shannon, No. CIV F-05-1485 LJO YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim); Towner v. Knowles, No. CIV S-08-2833 LKK EFB P, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegation that prison officials screened-out his inmate grievances without any basis failed to show a deprivation of federal rights). Accordingly, Plaintiff fails to state a cognizable claim for relief related to the inmate grievance procedure.

### D. Access to the Courts

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). However, to state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation." Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348) (internal quotation marks omitted); Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 351; Phillips, 588 F.3d at 655.

Based on Plaintiff's allegations in the first amended complaint, Plaintiff states a cognizable claim for denial of access to the Courts against Defendants Barron, Goings, Rivera, Hubach, and Derral G. Adams.

## IV.

## CONCLUSION AND ORDER

Plaintiff's first amended complaint states a cognizable claim against Defendants Barron and Goings for excessive force in violation of the Eighth Amendment, and against Defendants Barron,

Goings, Rivera, Hubach, and Derral G. Adams for denial of access to the courts in violation of the First Amendment. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. The Court will provide Plaintiff *one final* opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claim for excessive force against Defendants Barron and Goings and against Defendants Barron, Goings, Rivera, Hubach and Adams for denial of access to the courts, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and Defendants, and will forward Plaintiff five (5) summons and five (5) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Barron and Goings for excessive force and against Defendants Barron, Goings, Rivera, Hubach, and Adams for denial of access to the courts; and
3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **December 8, 2015**

UNITED STATES MAGISTRATE JUDGE

11